UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA CAUDLE, | Case No. 16-cv-07146-JSW |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE** |
| GEL SPICE CO., INC., et al., | |
| Defendants. | Re: Dkt. Nos. 39, 40 |

Now before the Court for consideration are the motions to dismiss and to strike filed by Defendants Gel Spice Co., Inc. and Big Lots Stores, Inc. (collectively "Defendants").[1]  The Court has considered the parties' papers, relevant legal authority, and the record in this case and the Court finds the motions suitable for disposition without oral argument.  *See* N.D. Civ. L.R. 7-1(b).  The Court HEREBY GRANTS IN PART and DENIES IN PART Defendants' motions.

## BACKGROUND

The following allegations are contained in Plaintiff's First Amended Complaint and are taken as true for purposes of the pleading stage.

Turmeric is a root and member of the ginger family.  (First Amended Complaint ("FAC") ¶ 14, Dkt. No. 36.)  It is widely used in food coloring, as a flavoring agent, and an ingredient in a number of other food items.  (*Id.*)  Defendant Gel Spice Co., Inc. ("Gel Spice") is a "leading importer and custom manufacturer of food service products," including turmeric.  (*Id.* ¶¶ 1.)  Defendant Big Lots Stores, Inc. ("Big Lots") rebranded Gel Spice's turmeric with its own brand

---

[1] Defendants have filed a request for judicial notice in support of its motions.  Because the Court does not need to refer to these items in resolving Defendants' motions, the request for judicial notice is DENIED as moot.

1  name, Fresh Finds Ground Turmeric Powder, and then sold it to consumers in its stores

2  nationwide.  (*Id.* ¶¶ 2, 21.)

3      Gel Spice promotes itself by claiming to "ensure safe and superior products" as well as

4  touting its "quality assurance programs."  (*Id.* ¶ 19.)  It also claims that it conducts "third party and

5  customer audits with 'superior ratings.'"  (*Id.* ¶ 20.)  In or around 2016, however, a routine

6  inspection of one of Gel Spice's turmeric products sold at Big Lots by the New York State

7  Department of Agriculture and Markets revealed elevated levels of lead.  (*Id.* ¶¶ 3, 22.)  While

8  lead is a naturally occurring element, it is toxic to humans and food contaminated with larger

9  amounts of lead can pose a health risk to consumers.  (*Id.* ¶ 16.)

10      In response to the discovery of elevated lead levels in one of its products, Gel Spice first

11  recalled the Fresh Finds Ground Turmeric Powder on July 17, 2016.  (*Id.* ¶ 3, 22.)  This recall was

12  labeled by the New York State Food Laboratory as "one associated with a significant risk to

13  public health (a Class 1 recall)."  (*Id.* ¶ 22.)  One month later, Gel Spice expanded the recall to

14  include a number of additional turmeric products.  (*Id.* ¶ 4.)

15      Plaintiff Pamela Caudle is a San Francisco resident who purchased Gel Spice's rebranded

16  Fresh Finds Ground Turmeric at her local Big Lots store.  (*Id.* ¶ 10.)  Plaintiff frequently would

17  add turmeric into smoothies and meals.  (*Id.*)  When she learned of Gel Spice's recall, she stopped

18  using the turmeric and, had she known of the elevated levels of lead in the product, would not

19  have purchased it given the safety risk.  (*Id* ¶¶ 5, 10.)

20      Based on these allegations, Plaintiff asserts three causes of action: (1) Violation of the

21  Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*; (2) breach of the implied

22  warranty of merchantability, in violation of California Commercial Code § 2314[2]; and (3) unfair

23  competition, in violation of California Business and Professions Code § 17200, *et seq.*  Plaintiff

24  _____

25  [2] In her FAC, Plaintiff labels her second cause of action "breach of implied warranties," suggesting that breach of more than one implied warranty is being alleged.  Further, the body of

26  the second cause of action makes reference to California Commercial Code § 2315, which relates to the implied warranty of fitness for a particular purpose.  In her opposition to the motion to

27  dismiss, however, Plaintiff has clarified that she only seeks to assert a claim for breach of the implied warranty of merchantability. *See* Opposition at 7 n.2, Dkt. No. 50.  If Plaintiff choses to

28  file a second amended complaint consistent with this order, she shall not include the irrelevant references to section 2315 unless she intends to assert such a claim.

seeks to represent a class of all persons in California who purchased certain turmeric products made by Gel Spice (identified by UPC code).  (FAC ¶ 23.)

Defendants have moved to dismiss Plaintiff's FAC in its entirety for lack of Article III standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  In addition, Defendants have filed a separate motion to strike Plaintiff's class allegations pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D).

## ANALYSIS

### A.    Applicable Legal Standards.

#### 1.    Motion to Strike.

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Immaterial matter "is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."  *Cal. Dep't of Toxic Substance Control v. ALCO Pacific, Inc.*, 217 F. Supp.2d 1028, 1032 (C.D. Cal. 2002) (internal citations and quotations omitted).  Impertinent material "consists of statements that do not pertain, or are not necessary to the issues in question."  *Id.*  Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. *Colaprico v. Sun Microsystems Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

Rule 23(d)(1)(D) provides that a court, "[i]n conducting an action under [Rule 23]," may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  Under this rule, the Court "has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained."  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).

#### 2.    Motion to Dismiss for Lack of Jurisdiction Under Rule 12(b)(1).

A motion to dismiss for lack of standing is evaluated under Federal Rule of Civil Procedure 12(b)(1).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where a defendant makes a facial attack on

jurisdiction, factual allegations of the complaint are taken as true. *See Fed. of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." (citation and internal quotations omitted)). The plaintiff is then entitled to have those facts construed in the light most favorable to him or her. *Fed. of African Am. Contractors*, 96 F.3d at 1207.

    *3.    Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6).*

    A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

    Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

    In addition, claims sounding in fraud or mistake are subject to heightened pleading requirements, which require that a plaintiff claiming fraud "must state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b). In addition, a claim "grounded

in fraud" may be subject to Rule 9(b)'s heightened pleading requirements.  A claim is "grounded in fraud" if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim.  *Vess v. Ciba-geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).

Rule 9(b)'s particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106.  Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

**B.**     **Defendants' Motion to Strike.**

Defendant's motion to strike reads like an opposition brief to a class certification motion that has not yet been filed.  Defendants argue that the class definition is "overbroad" and thus improper; that Plaintiff cannot satisfy the commonality requirement of Rule 23(a)(2), the typicality requirement of Rule 23(a)(3),  or the predominance requirement of Rule 23(b)(3); and that the putative class is not "ascertainable."

"[I]n general, class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification."  *Yastrab v. Apple Inc.*, No. 14-cv-01974-EJD, 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015); *see also Miranda v. Coach, Inc.*, No. 14-cv-02031-JD, 2015 WL 636373, at *3 (N.D. Cal. Feb. 13, 2015) ("[M]any courts have recognized that the sufficiency of class allegations are better addressed through a class certification motion, after the parties have had an opportunity to conduct some discovery." (citation and internal quotations omitted)).  While examples exist of courts striking class allegations at the pleading stage, this is exceeding rare.  *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 616 (N.D. Cal. 2007) ("[T]he granting of motions to dismiss class allegations before discovery has commenced is rare.").  "Courts that have stricken class allegations . . . have only done so in rare occasions where the class definition is obviously defective in some way."  *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014).

The Court agrees with Defendants that Plaintiff's class definition, as currently pled, is overbroad. Specifically, Plaintiff seeks to represent a California class of all people who purchased certain turmeric products produced by Gel Spice, identified only by UPC code. (FAC ¶ 23.) However, as Plaintiff's complaint alleges, the recall of Gel Spice's turmeric products was defined not only by UPC code, but also certain "Best By" dates. (FAC ¶ 4.) Putative class members who purchased products corresponding to certain UPC codes but who bought them before or after the relevant "Best By" date lots would, based on the current allegations, have suffered no injury. In addition, it is unclear on the face of the Complaint whether the class claims against Big Lots are properly limited to claims brought by consumers who purchased the turmeric products at issue from a Big Lots store. For this reason, the class allegations as currently plead will be struck. Plaintiff, however, will be given leave to amend to provide a more accurate definition of the putative class.

In all other respects, the Court rejects Defendants' motion to strike. First, it is not obvious that Plaintiff will not be able to satisfy the commonality, typicality, or predominance requirements of Rule 23 for those claims that she is able to adequately plead. Accordingly, Defendant's motion to strike on this basis is premature. The merit of these arguments is better left to the class certification stage.

Second, the Court rejects Defendants' argument that a properly defined class would not be ascertainable. *See In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ("Neither the fact that class members have to 'self-identify' nor that they might not have readily available proof of purchase, means that they are not ascertainable sufficient for class certification."). In fact, Defendants note in their reply brief that self-identification is "not a viable method for ascertaining class members here because putative class members are unlikely to have maintained receipts or other records for such small purchases." (Reply ISO Mot. to Strike at 14, Dkt. No. 56.) Such an argument assumes a premise—that receipt or proof of purchase is required—that the Ninth Circuit has expressly rejected. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017) ("ConAgra claims that Plaintiffs did not propose any way to identify class members and cannot prove that an administratively feasible method exists because

consumers do not generally save grocery receipts and are unlikely to remember details about individual purchases of a low-cost product like cooking oil. We have not previously interpreted Rule 23 to require such a demonstration, and, for the reasons that follow, we do not do so now.").

Accordingly, to the extent Plaintiff's class definition appears overbroad, Defendants' motion to strike will be GRANTED. Because these defects can be easily corrected through a modification of the putative class definition, the Court will afford Plaintiff leave to amend. In all other respects, Defendants' motion to strike is DENIED.

**C.    Defendants' Motion to Dismiss.**

Defendants seek to dismiss each of Plaintiff's claims on a number of grounds. For the following reasons, the Court grants in part and denies in part Defendants' motion.

*1.    Plaintiff's Article III Standing.*

"To satisfy Article III standing, a plaintiff must show (1) he has suffered an 'injury in fact' that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012).

Defendants contend that Plaintiff lacks standing to assert her claims because she "alleges no injury traceable to Defendants' alleged conduct." (Motion at 5.) Specifically, Defendants argue that Plaintiff has "failed to plead any facts establishing a causal connection between any alleged misrepresentations by Defendants and any resulting injury." *Id.*

The Court largely disagrees. First, to the extent Plaintiff brings an implied warranty claim, Defendants fail to persuasively argue why Plaintiff lacks standing to assert *that* claim. Defendants' arguments are directed entirely at the theory that Plaintiff has not drawn a causal connection between a misrepresentation and her injury. However, an implied warranty claim does not require a showing of any misrepresentation. *See* CACI No. 1231 (discussing the essential elements of an implied warranty of merchantability claim). Plaintiff's alleged injury in this case is having purchased turmeric powder manufactured by Gel Spice and sold by Big Lots that was contaminated with lead and therefore not safe for consumption. She claims she would not have

purchased the turmeric (that is, would not have incurred economic loss), had Defendants disclosed that their turmeric was contaminated with lead. (FAC ¶ 5.) This is sufficient to meet Article III's requirements as to the implied warranty claim. Whether this claim will ultimately succeed on the merits is a separate inquiry. *See, e.g.*, *Patel v. Trans Union, LLC*, No. 14-cv-0522-LB, 2016 WL 6143191 (N.D. Cal. Oct. 21, 2016) ("Throughout their discussion, the defendants conflate Article III standing analysis with merits analysis. Whether the plaintiffs can prove liability is one question; whether they are claiming a sufficient Article III injury is another."); *see also Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 716 (4th Cir. 2015) ("The Supreme Court has also cautioned that the 'absence of a valid . . . cause of action' does not implicate the court's 'power to adjudicate the case,' and we therefore take care not to conflate a standing inquiry with a merits inquiry." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-102 (1998)).

For the same reasons, to the extent Plaintiff's UCL claim is predicated on the unlawfulness prong of that statute, the Court finds that Plaintiff has demonstrated Article III standing. As to Plaintiff's UCL claim brought under the fraudulent or unfairness prongs, however, the Court's ability to analyze the standing issue is hampered by Plaintiff's failure to clearly articulate her theory in question. This is discussed more below. For purposes of this motion, the Court will assume that Plaintiff intends to proceed under both an affirmative misrepresentation theory and an omissions theory.

To the extent Plaintiff is relying on affirmative misrepresentations by Defendants regarding the quality of the turmeric, Plaintiff has failed to demonstrate facts demonstrating that she has Article III standing because she not demonstrated that her economic harm was caused by any affirmative misrepresentation. Specifically, Plaintiff never alleges she *saw* any purported misrepresentation before purchasing the turmeric in question and relied on that misrepresentation in purchasing the turmeric. *See In re iPhone Application Litig.*, 6 F. Supp. 3d 1004 (N.D. Cal. 2013) (dismissing for lack of Article III standing UCL claim predicated on alleged misrepresentations because consumers did not allege that they "saw, let alone read and relied upon, the alleged misrepresentations").

To the extent these claims rely on Defendants' alleged failure to disclose the lead

contamination, however, Plaintiff has sufficiently facts establishing Article III standing. As just discussed, Plaintiff alleges that had Defendants disclosed the lead contamination, she would not have purchased the turmeric. This is sufficient, at the pleading stage, to establish Article III standing on an omission theory. *See, e.g.*, *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 661 (N.D. Cal. 2016) (finding Article III standing for UCL claim where plaintiff alleged "she would have either not purchased or paid less for Hershey's products if she had known that the *supply chain* involved the labor abuses at issue"); *Todd v. Tempur-Sealy Int'l, Inc.*, 13-cv-04984-JST, 2016 WL 344479, at *4 (N.D. Cal. Jan. 28, 2016) (finding Article III standing where plaintiffs alleged "that some customers have been harmed by the Tempur product and that they would not have purchased the products had they known of the products' chemical contents"); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) ("[W]hen, as here, 'Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact." (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)).

Accordingly, the Court concludes that Plaintiff has Article III standing to assert her claims, except to the extent Plaintiff bases her UCL claim on alleged affirmative misrepresentations. As discussed more below, the Court is affording Plaintiff leave to amend to clarify the theory (or theories) on which her UCL claim is based. To the extent Plaintiff intends to proceed on an affirmative misrepresentation theory in her second amended complaint, she will be expected to plead sufficient facts demonstrating that her economic loss injury is "fairly traceable" to the challenged affirmative misrepresentations.

### 2. *Implied Warranty of Merchantability Claim.*

Defendants attack Plaintiff's implied warranty of merchantability claim on two bases. First, they argue that Plaintiff failed to provide the requisite pre-suit notice of the alleged breach. Second, they contend that Plaintiff's implied warranty claim against Gel Spice fails because Plaintiff is not in vertical privity with Gel Spice. The Court finds that Plaintiff's implied warranty claim against Big Lots fails due to lack of notice. The Court, however, declines to dismiss Plaintiff's implied warranty claim against Gel Spice.

*a.*     *Plaintiff's Failure to Provide Pre-Suit Notice of the Alleged Breach.*

Under California Commercial Code section 2607, after tender has been accepted, a buyer seeking to assert a breach "must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Cal. Comm. Code § 2607(3)(A). Thus, "[t]o avoid dismissal of a breach of contract or breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'" *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (quoting *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp.2d 1128, 1142 (N.D. Cal. 2010)). This notice requirement applies to claims alleging breach of both express and implied warranties. *See, e.g.*, *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. 13-cv-1803 EMC, 2014 WL 1048710, at *9 & n.2 (N.D. Cal. Mar. 14, 2014).

Plaintiff does not dispute that she did not provide either Gel Spice or Big Lots with notice of the alleged breach of implied warranty before filing suit. As to her implied warranty claim against Big Lots, this failure is fatal. Plaintiff argues that she was not required to provide notice to Big Lots because the Court may infer Big Lots' actual knowledge of the lead contamination from Gel Spice's voluntary recall. (Opposition at 10, Dkt. No. 50.) Even if the Court were to accept Plaintiff's contention that Big Lots was aware of the alleged breach of implied warranty, this would not save Plaintiff's implied warranty claim against Big Lots.

"The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court." *Alvarez*, 656 F.3d at 932. Even if Big Lots was aware of the precise issue with the affected turmeric (and Gel Spice's voluntary recall), it would not be aware that Plaintiff had deemed Big Lots to be in breach of the implied warranty or was considering litigation. Notwithstanding Big Lots' purported knowledge of the underlying facts, Plaintiff's failure to provide notice deprived Big Lots of an opportunity to, among other things, "repair the defective item, reduce damages, . . . and negotiate [a] settlement" with Plaintiff. *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 135 (2008). For this reason, courts have generally held that the notice requirement applies, notwithstanding the defendant's apparent knowledge of the alleged breach. *Metowski v. Traid*

10

*Corp.*, 28 Cal. App. 3d 332 (1972) ("Where the merchandise was sold under circumstances which indicate the seller acted in bad faith and was aware of the breach at the time of sale, demand for notice of the breach from each and every member of the class may be a meaningless ritual. Nevertheless, the statutory demand for notice applies . . . ."); *see also Davis v. Apperience Corp.*, No. 14-cv-0766 WHA, 2014 WL 5528232, at *5 (N.D. Cal. Oct. 31, 2014) ("[T]he Court is unwilling to dispense with the notice required by Section 2607(3)(A) and unwilling to invite extensive satellite litigation into futility and/or actual knowledge.").[3]

As to Gel Spice, however, the question of whether pre-suit notice is required is more complicated.  Plaintiff argues that pre-suit notice to Gel Spice was not required because the notice requirement does not apply to "manufacturers with whom the purchaser did not deal." (Opposition at 8.)  The Court agrees.

The decisions from the federal district courts in California appear to be in some tension as to whether a consumer must provide pre-suit notice to a remote manufacturer.  On one hand, Defendants cite to *Swearingen v. Santa Cruz Natural, Inc.*, No. 13-cv-04291-SI, 2016 WL 4382544 (N.D. Cal. Aug. 17, 2016).  There, the court dismissed, with prejudice, the plaintiff's implied warranty claim against a beverage manufacturer due to plaintiff's failure to provide pre-suit notice.  *Id.* at *11.  The Court has reviewed the relevant briefing by the parties in *Swearingen*. Significantly, the plaintiff never made the argument that notice to a remote manufacturer is, or should be, excused under California law.  Instead, the only argument plaintiff made in response to the defendant's notice argument was that the filing of the complaint itself could constitute sufficient notice—an untenable position under California law.  It does not appear, therefore, that the court in *Swearingen* expressly considered the question now before the Court.

In contrast to *Swearingen*, a number of courts have found that Plaintiff is not required to provide pre-suit notice to a remote manufacturer.  *See, e.g.*, *Michael v. Honest Company, Inc.*, No.

---

[3] Citing out-of-state case law, Plaintiff also contends that pre-suit notice is not required where a defendant "is responsible for placing defective and dangerous products on the market" and "had knowledge of the problem before a plaintiff had a reasonable opportunity to provide notice." (Opposition at 9.)  Plaintiff concedes that no California case has reached this conclusion.  The Court declines to create a new exception to California's notice requirement.

11

15-cv-07059 JAK , 2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) ("[C]ourts . . . have found that where a plaintiff purchases a product from a retailer, '*Greenman* applies, excusing consumers from notifying the manufacturer of the problem prior to bringing a breach of express warranty claim.'" (citation omitted)); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1103 (N.D. Cal. 2015) (declining to dismiss implied warranty claim because "federal district courts in California have routinely held that plaintiffs are not required to provide pre-suit notice to a remote seller/manufacturer with whom they have not dealt" (citation and internal quotations omitted)); *Mason v. Nature's Innovation, Inc.*, No. 12-cv-3019 BTM, 2013 WL 1969957, at *6 (S.D. Cal. May 13, 2013) ("Courts have excused notice of breach of *implied* warranty where the plaintiff did not deal directly with the manufacturer."); *Aaronson v. Vital Pharm., Inc.*, No. 09-cv-1333 W(CAB), 2010 WL 625337, at *5 (S.D. Cal. Feb. 17, 2010) ("Because Aaronson's claims are against Vital Pharm in its capacity as a manufacturer, not as a seller, notice is not required.").

These latter cases have generally relied on the California Supreme Court's case of *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57 (Cal. 1963).[4] In addressing the notice requirement, the court stated:

> "As between the immediate parties to the sale (the notice requirement) is a sound commercial rule, designed to protect the seller against unduly delayed claims for damages. As applied to personal injuries, and notice to a remote seller, it becomes a booby-trap for the unwary. The injured consumer is seldom steeped in the business practice which justifies the rule," and at least until he has had legal advice it will not occur to him to give notice to one with whom he has had no dealings."

*Id.* at 61 (quoting William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L.J. 1099, 1130 (1960) (citation omitted)). The reasoning of *Greenman* would appear to apply squarely to this case. A consumer who purchases an adulterated food product at a grocery store is surely not "steeped in the business practice" which justifies the notice requirement and would likely not realize that notice needed to be given to an entity with whom he or she has not dealt. In this way, the notice requirement in such circumstances would truly be a

---

[4] *Greenman* involved the notice provision of former California Civil Code section 1769, a provision that is similar to Commercial Code section 2607. *See Metowski*, 26 Cal. App. 3d at 339.

"booby-trap for the unwary."

Defendants nonetheless argue that the reliance on *Greenman* is unavailing because that California Supreme Court "held that an *injured* consumer could sue a manufacturer for breach of *express* warranty even if the injured consumer had not given timely statutory notice to the manufacturer." (Reply at 5 (emphases in original).) The Court is unpersuaded. First, California courts have applied the rule in *Greenman* outside the personal injury context. *See, e.g.*, *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Cavanaugh*, 217 Cal. App. 2d 492, 515 (1963) (applying *Greenman* in a case involving faulty construction work that did not cause any personal injury). In fact, in *Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. 2013), the court expressly held that "*Greenman* imposes no physical injury requirement on plaintiffs who bring a breach of express warranty claim against a manufacturer for a defective product purchased from a dealer." *Id.* at 995.

Second, the notice requirement for both express and implied warranty claims stems from the same statutory source: Commercial Code section 2607(3)(A). *See, e.g.*, 2014 WL 5528232, at *5; *S. Cal. Stroke Rehab. Assocs., Inc. v. Nautilus, Inc.*, No. 09-cv-744-CAB (MDD), 2012 WL 4364144 (S.D. Cal. Sept. 21, 2012) ("All three of Plaintiff's causes of action for breach of express and implied warranties expressly require an essential element of each claim that the buyer provide the seller with reasonable notice of the breach." (citing Cal. Comm. Code § 2607(3)(A)).[5] Defendants have provided no explanation for why the Court should treat express and implied warranty claims differently for purposes of section 2607(3)(A)'s notice requirement.

The Court joins those courts that have held that a consumer asserting a breach of warranty claim need not provide notice to a remote manufacturer with whom he or she has not dealt. The Court therefore declines to dismiss Plaintiff's implied warranty claim against Gel Spice on this basis. *See In re Carrier IQ*, 78 F. Supp. 3d at 1103 ("[I]nsofar as the [Complaint] contains no

---

[5] The Court notes that the Judicial Council of California Civil Jury Instructions for both breach of the express warranty and breach of implied warranty refer to the same proposed jury instruction governing the reasonable notice requirement. *See* CACI No. 1230 (express warranty); CACI No. 1231 (implied warranty). This instruction, in turn, cites Commercial Code 2607(3)(A) as authority. *See* CACI 1243.

13

1    allegations that the California Plaintiffs are either sophisticated business entities or dealt with the

2    Device Manufacturers directly, the Court will not dismiss the California implied warranty claims

3    on this basis.").

4              *b.*     *Plaintiff's Lack of Vertical Privity with Gel Spice.*

5         In order to assert a claim for breach of the implied warranty under Commercial Code

6    section 2314, a plaintiff generally must "stand in vertical contractual privity with the defendant. A

7    buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Clemens*

8    *v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citation omitted). As a result, an

9    "end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Id.* Plaintiff

10   does not claim to be in privity with Gel Spice. This does not, however, mean that her implied

11   warranty claim against Gel Spice is barred.

12        As the Ninth Circuit has recognized, "particularized exceptions" to the privity rule exist.

13   *Id.* One of these exceptions is the so-called "foodstuffs" exception. "In [California] an exception

14   to the requirement of privity has been made in cases involving foodstuffs, where it is held that an

15   implied warranty of fitness for human consumption runs from the manufacturer to the ultimate

16   consumer regardless of privity of contract." *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 695

17   (1954); *see also Vaccarezza v. Sanguinetti*, 71 Cal. App. 2d 687, 689 (1945) ("The warranty

18   applies to the sale of foodstuffs for human consumption, and runs with the goods to the ultimate

19   consumer, there being no requirement of privity between the ultimate consumer and

20   manufacturer.").

21        Plaintiff contends that the foodstuffs exception applies in this case because Gel Spice's

22   turmeric powder is a food item designed for human consumption. Gel Spice argues, however, that

23   the exception is inapplicable where, as here "the plaintiff does not allege any physical injuries as a

24   result of consuming the product." (Motion at 8.) Gel Spice is correct that the California cases

25   discussing the foodstuffs exception have factually involved cases where the plaintiff had

26   experienced some form of physical injury as a result of consuming the adulterated food. *See, e.g.*,

27   *Klein v. Duchess Sandwich Co.*, 14 Cal.2d 272, 274 (1939) (plaintiffs became "ill and vomited"

28   for a few days after eating a maggot infused sandwich); *Vaccarezza* , 71 Cal. App. 2d at 689

(plaintiffs became ill with trichinosis after consuming infested salami).

The cases recognizing the foodstuffs exception, however, do not expressly limit the exception to situations where the plaintiff suffered physical injury from the food product at issue. *Cf. Klein*, 14 Cal.2d at 282 ("[T]he implied warranty provision therein contained should inure to the benefit of any ultimate *purchaser or consumer* of food . . . ." (emphasis added)).[6]  In fact, in referencing the foodstuffs exception in the context of an insurance dispute, the California Court of Appeal has noted that in the "peculiar context of foodstuffs, the theory of breach of an implied warranty of merchantability has closer affinities to tort law than to contract law because it allows recovery of damages, without regard to privity of contract, for personal injuries *as well as economic loss*." *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 871 (2000) (emphasis added).  Similarly, in *Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358 (9th Cir. 2016), the Ninth Circuit disagreed with the district court's reasoning that an implied warranty claim against the manufacturer of a testosterone supplement failed due to a lack of privity or injury.  The court, citing the privity exception for "cases involving foodstuffs, drugs and pesticides," held that "[p]rivity is not required for breach of warranty claims for consumable goods" and found that plaintiffs had "allege[d] injury in the form of the amount paid for each product." *Id.* at 363 (citing *Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187, 1201 (2011)).  Notably, there was no allegation that the supplement in that case had caused the plaintiffs any physical injury.

In addition, the Court does not believe that the policy considerations underlying the

---

[6] The Court notes that one of the cases the *Klein* court cited with approval when recognizing the foodstuffs exception involved the Washington Supreme Court applying the exception to a restaurateur who purchased meat containing a "foul, filthy, nauseating, and poisonous substance" from a middle-man.  The restaurateur served the meat in question to a patron who "became sick and nauseated, and did then and there in the presence of other persons publicly expose and denounce the service to him of such foul and poisonous food." *Mazetti v. Armour & Co.*, 135 P. 633, 633-34 (Wash. 1913).  Even though the restaurateur-plaintiff had not suffered any physical injury himself, the Washington Supreme Court still applied the privity exception to allow him to sue the manufacturer.  In reaching this finding that the exception did not turn on the nature of the resulting damage: "It seems that the test should not rest in finding the plaintiff's damage in health or business, but in answering the question whether there has been a damage which may be justly attributed to the negligence or a breach of duty on the part of the one who had the power and whose duty it was to prevent the wrong." *Id.* at 634.

foodstuffs exception warrant reading a "physical injury" requirement into the exception.  In

finding that public policy supported the adoption of a foodstuffs exception, the court in *Klein*

noted:

> Many statutes have been enacted in recent years which have had for
> their purpose the safeguarding of the public health, such as the pure
> food and drug acts, the regulation of milk and dairy products, etc.,
> the aim and purpose of which enactments are that, in the interest of
> the public welfare, only wholesome food may be sold for human
> consumption.  As hereinbefore has been said, the remedies of an
> injured consumer of unwholesome food ought not to be made to
> depend "upon the intricacies of the law of sales,' and the warranty of
> the manufacturer to such consumer should not be made to rest solely
> on "privity" of contract.

*Klein*, 14 Cal.2d at 282 (quoting *Ketterer v. Armour & Co.*, 200 F. 322 (S.D.N.Y. 1912) ; *see also*

*id.* at 278 ("'Considerations of public policy demand that the utmost care and cautious be exacted

from the manufacturer of articles of food . . . .'" (quoting *Ward Baking Co. v. Trizzino*, 27 Ohio

App. 475, 485 (1928)).  More recently, a district court in California recognized that the exception

was developed "to protect consumers from injuries resulting from ingesting products that

manufacturers warrant are suitable for human consumption."  *Nadler v. Nature's Way Products,*

*LLC*, No 13-cv-100 TJH, 2014 WL 12601567, at *3 (C.D. Cal. Mar. 27, 2014).  Other

jurisdictions have recognized that the foodstuffs exception is directed towards protection of the

public.  *See, e.g.*, *Jacob E. Decker & Sons v. Capps*, 164 S.W.2d 828 (Tex. 1942) ("[W]here the

food products sold for human consumption are unfit for that purpose, there is such an utter failure

of the purpose for which the food is sold, and the consequences of eating unsound food are so

disastrous to human health and life, that the law imposes a warranty of purity in favor of the

ultimate consumer as a matter of public policy."); *Jones v. Gulf States Steel Co.*, 88 So. 21 (Ala.

1921) ("The exception here referred to grew out of the necessity of the case, sustaining a wise

public policy for the protection of human life and health, and placed upon the manufacturer and

vendor of drugs, foods, and beverages, a high degree of care because of their superior knowledge

of the articles manufactured, and the necessity reliance which the public must place upon them.").

The foodstuffs exception is thus designed to discourage the production of adulterated,

dangerous foods and to protect consumers from injuries that can result from such products.  These

16

aims would not be served by allowing a manufacturer to escape liability for producing an adulterated product that posed a risk to human health simply because the ultimate consumer was lucky enough to avoid being physically injured by the product. *Mexicali Rose v. Superior Court*, 1 Cal.4th 617, 621 (1992) ("[A]cceptance of an implied warranty rule against manufacturers in cases involving unfit foodstuffs was based on the rationale that a manufacturer that sold food items could no longer hide behind the shield of privity to absolve itself of liability."); *see also Nadler*, 2014 WL 12601567, at *3 (finding exception did not apply because the "complaint does not allege any physical injury from ingesting the products, *nor does the complaint make any allegations regarding the safety of any ingredients*" (emphasis added)). Consequently, the Court reads the foodstuffs exception as designed to protect consumers from adulterated food items which pose a risk to human health, and not merely to ensure a remedy for those consumers who have suffered a physical injury as a result of that risk.

As between a consumer who, for instance, gets sick from eating a sandwich laden with maggots (*see Klein*) and one who eats the same sandwich but has the good fortune not to get sick, Gel Spice has not explained why the former, but not the latter, should be able to proceed with an implied warranty claim against the manufacturer. Both purchased a product which breached the implied warranty in a way that allegedly poses a risk to human health. California courts have made clear this warranty flows to the ultimate consumer of food products without regard for principles of privity. Further, both hypothetical consumers suffered damages. The consumer who avoided the physical injury will still have spent money on a product that was ultimately not of merchantable quality.[7] *See Bitton*, 654 F. App'x at 363 (noting plaintiffs had "allege[d] injury in

---

[7] Gel Spice relies primarily on the case of *Hammock v. Nutramarks, Inc.*, No. 15-cv-2056 BTM, 2016 WL 4761784 (S.D. Cal. Sept. 12, 2016), as support for its proposed "physical injury" requirement. That case did not involve adulterated food products, but rather a group of homeopathic products that the manufacturer contended had certain symptom relief qualities. The court found the foodstuffs exception did not apply because, while the product at issue was made for human consumption, the plaintiffs did not allege "that the Products made them sick, only that the Products did not work as advertised." *Id.* at *5. To the extent this case can be read as requiring a plaintiff to demonstrate a physical injury in all circumstances, the Court simply disagrees. For the reasons discussed above, the Court is of the opinion that where an allegedly adulterated food product creates a *risk* to human health, the exception applies. Notably, this issue was not at issue in *Hammock* as there was no argument that the products in that case were unfit for human consumption. *Cf. Burr*, 42 Cal.2d at 695 (discussing the implied warranty in this context is

the form of the amount paid for each product").

Plaintiff has alleged that Gel Spice's affected turmeric products were adulterated with lead. She has further alleged that elevated lead contamination in food pose a health risk.  (FAC ¶¶ 16, 22.)  It can also be inferred from the allegations that Plaintiff consumed the adulterated turmeric.  (*See id.* ¶ 10 ("Plaintiff stopped using the Turmeric Products, but retained the remaining bottles she had . . . .").  In these situations, the Court does not read California law as requiring Plaintiff to actually get physically ill before the foodstuffs exception will apply. Accordingly, the Court concludes that the foodstuffs exception applies and declines to dismiss Plaintiff's implied warranty claim against Gel Spice due to a lack of privity.[8]

### c.  Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's implied warranty claim against Big Lots and dismisses this claim with prejudice.  The Court DENIES Defendants' motion to dismiss Plaintiffs' implied warranty claim against Gel Spice.

### 3.  MMWA Claim

Plaintiff alleges a cause of action under the MMWA.  Defendants move to dismiss this claim on the basis that Plaintiff has failed to adequately allege an implied warranty claim under California law.  Plaintiff concedes that her MMWA claim depends on the viability of her implied warranty claim.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("The district court held—and Clemens does not dispute—that the claims under the Magnuson-Moss Act stand or fall with his express and implied warranty claims under state law.  Therefore, this court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.").

Accordingly, the Court's disposition of Plaintiff's California implied warranty claim controls the disposition of her MMWA claim.  Defendants' motion to dismiss Plaintiff's MMWA claim is GRANTED as to Big Lots and DENIED as to Gel Spice.

United States District Court
Northern District of California

---

one of "an implied warranty of fitness for human consumption").

[8] Because the Court concludes that the foodstuffs exception applies, it need not consider whether a third-party beneficiary exception to the vertical privity requirement applies.

18

4.     *Unfair Competition Law Claim*

In general, California's UCL prohibits any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Here, Plaintiff seeks to assert a claim under all three prongs.  Defendants have raised a number of challenges to Plaintiff's UCL claims.  The Court's ability to evaluate these arguments, however, is hampered by a fundamental ambiguity (and pleading deficiency) in Plaintiff's complaint that the parties' briefing has highlighted.

In their motion to dismiss, Defendants largely target what they perceive as Plaintiff's failure to adequately allege facts surrounding any alleged "misrepresentation" regarding Defendants' turmeric products.  (*See, e.g.*, Motion at 10 (arguing Plaintiff has not shown statutory standing because she has not alleged she "personally viewed the alleged misrepresentations on Gel Spice's website"); *id.* at 12 ("Plaintiff's allegations regarding the alleged misrepresentations by Gel Spice are entirely inadequate to satisfy Rule 9(b)'s heightened pleading requirement.").)  In her opposition, Plaintiff does not directly respond to these arguments, and instead argues that she has stated a claim based on Defendants' fraudulent *omissions*.  (*See, e.g.*, Opposition at 15 ("Defendants argue that Plaintiff lacks statutory standing because she did not allege reliance on Defendants' misrepresentations.  This is of no moment, however, because Plaintiff does clearly allege reliance on Defendants' *omissions*."); *see also id.* at 17-18 (discussing fraudulent omission claims under the fraud claim of the UCL).)

A claim under the UCL's fraudulent or unfairness prongs can be based on either affirmative misrepresentations, fraudulent concealment, or both.  *See, e.g.*, *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (noting fraudulent omissions are actionable under the UCL); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1027 (N.D. Cal. 2013) (discussing UCL claims based on asserted misrepresentations).  As referenced above, Plaintiff has not clearly articulated which theory or theories serve as the basis for her UCL claim.  The Court notes that the FAC contains a number of allegations relating to Defendants' alleged affirmative misrepresentations regarding the safety and superiority of their turmeric products.  (*See, e.g.*, FAC ¶ 66 ("Defendants falsely represented that their Turmeric Products were safe and superior, when in fact they contained a toxic substance, lead.").)  At the same time, there are reliance-based

19

allegations which hint at an omissions-based theory. (*See, e.g.*, *id.* ("A reasonable consumer would not have purchased the affected Turmeric Products from Defendants if they had been aware of this fact.").) Notably, while Plaintiff's opposition argues in favor of an omissions theory, she nowhere directly disclaims any intention of relying on an affirmative misrepresentation theory. Nor does she assert she is attempting to plead alternative theories. *See Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575 (N.D. Cal. 1999) ("A party may plead alternative theories of liability, even if those theories are inconsistent or independently sufficient.").

Plaintiff's failure to adequately allege the theory on which her UCL claim is based means that Plaintiff's FAC fails to provide Defendant's with adequate notice of their alleged wrongdoing under Federal Rule of Civil Procedure 8, let alone satisfy the heightened standard of Rule 9(b). The Court will accordingly dismiss Plaintiff's UCL claim, but afford her leave to amend to clarify the bases of the claim and address the arguments leveled by Defendants in their motion to dismiss.

In amending her FAC, the Court advises Plaintiff that the FAC as currently drafted is, in places, disjointed. For example, important factual allegations sometimes appear in the "Introduction" section but are then not repeated in the "Factual Allegations" section. Additionally, in places the FAC relies on legal conclusions or conclusory allegations to support her UCL claim. For example, in support of her UCL unlawful-prong claim, Plaintiff simply provides a list of general statutes that Defendants' alleged conduct violates (FAC ¶ 67), but nowhere indicates the sections violated or explains *why* the conduct violates those provisions. *Cf. Baba v. Hewlett-Packard Co.*, No. 09-cv-5946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) ("If plaintiffs wish to base a UCL 'unlawfulness' claim on any one statute, [prior cases] compel them to plead with particularity how the facts of this case pertain to that specific statute."). Similarly, the allegations relating to the UCL unfairness consist largely of simple restatement of the legal standard applicable to such claims. (*See, e.g.*, FAC ¶ 67(a), (b).) Finally, Plaintiff is advised to closely examine the legal requirements applicable to a UCL claim and ensure that she has alleged sufficient facts to meet those requirements.[9]

United States District Court
Northern District of California

---

[9] By way of example, to the extent Plaintiff's UCL fraudulent or unfair prong claims are relying on an affirmative misrepresentation theory, she has failed to allege facts demonstrating that she

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's UCL claim and will give Plaintiff leave to amend this claim.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS  IN PART and DENIES IN PART Defendants' motion to strike.  Plaintiff may file a second amended complaint to correct the deficiencies in the class allegations identified by this Order.

The Court also GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.  Plaintiff's warranty claims against Big Lots are dismissed, with prejudice.  Plaintiff's UCL claim is dismissed, with leave to amend.  Defendants' motion to dismiss Plaintiff's warranty claims against Gel Spice is denied.

If Plaintiff wishes to file an amended complaint, she may do so no later than August 21, 2017.  The parties' shall appear for a case management conference on September 15, 2017 at 11:00 a.m., and the parties' joint case management conference statement shall be due on September 8, 2017.

In closing, the Court feels compelled to address the tenor of Defendants' reply brief.  At almost every turn, Defendants argue not that Plaintiff's arguments in opposition fail, are without merit, or that Plaintiff is mistaken.  Instead, Defendants repeatedly charge Plaintiff (or, more accurately, Plaintiff's counsel) with "misrepresenting" the law or record.  This term commonly connotes intent to deceive, particularly where, as here, such phrases as "blatantly misrepresents" or "brazenly misconstrues and misrepresents" are employed.  *See Black's Law Dictionary* 1152 (10th ed. 2014) ("misrepresentation").  Having reviewed the arguments at issue, the Court finds Defendants' characterization to be, at best, unhelpful.[10]  "'Our adversarial system relies on

---

has standing under the UCL, much like she will need to add allegations demonstrating Article III standing. *See, e.g.*, *Letizia v. Facebook, Inc.*, No. 16-cv-06232-TEH, 2017 WL 3006950, at *4 (N.D. Cal. July 14, 2017).  To the extent these claims rely on an omission theory, Plaintiff fails to plead facts showing that Defendants had a duty to disclose the challenged information.  *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012) (setting forth circumstances under which a defendant has a duty to disclose information).  Additionally, Plaintiff is advised that she must plead facts showing how *each* Defendant violated the UCL.  In other words, Plaintiff must provide both Big Lots and Gel Spice with notice of how they *each* allegedly violated the UCL.

[10] Defendants' similar conduct in their opposition to Plaintiff's administrative motion relating to

attorneys to treat each other with a high degree of civility and respect.'  Accordingly, accusations of dishonesty on the part of opposing counsel should be reserved for those instances where the record clearly supports the charge, and not used as a mere rhetorical flourish."  *Tasion Comm'cns, Inc. v. Ubiquiti Networks, Inc.*, No. 13-cv-1803 EMC, 2013 WL 6234587, at 3 n.3 (N.D. Cal. Dec. 2, 2013) (quoting *Ahanchian v. Xenon Pictures, Inc*., 624 F.3d 1253, 1263 (9th Cir. 2010)).

This type of behavior is unacceptable to the Court.  Similar conduct by counsel in the future will be met with appropriate sanctions.

**IT IS SO ORDERED**

Dated: July 21, 2017

_____
JEFFREY S. WHITE
United States District Judge

---

her oversized opposition brief is equally troubling.  There, Defendants ascribed Plaintiff's purported misrepresentations to "ignorance (willful or otherwise), laziness, or deliberate malice." (Dkt. No. 62, at 3.)